Welch, J.
The questions argued in the case are reducible to two : 1. Were the sureties liable for the brewery funds— the assets invested in the brewery, and its proceeds ? 2. If so, has the necessary proceeding been had against their principal, to authorize a suit on their bond ?
Both questions, though presented in different forms, arise at every stage of the case. They are made by the demurrer to the original petition; by the demurrer to that part of the akswer denying notice; by the testimony set out in the bill of exceptions; and now by the petition in error. In each place they are substantially the same questions, and their solution disposes of the entire case.
*273 Let us consider them in their order.
1. Were the sureties liable for the administration of the brewery funds? That is, were these funds assets, or were they a separate trust fund; and if the latter, were the sureties bound by the terms of their bond for its management and disposition ?
It is very difficult, in many cases, to draw the line between assets and trusts, where the executor sustains at once the character of executor and trustee. The books furnish numerous cases of the kind, and the authorities are to some extent conflicting. Perhaps no inflexible rule can safely be laid down to show, with certainty, where the estate ends and the separate trust begins. Every case must necessarily depend more or less on its own peculiar circumstances. And yet we are not wholly without rules and guides on the subject; and it seems to us that they unmistakably show that these brewery funds are to be regarded as part of the assets of the estate.
In Sheppard’s Touchstone (496) it is said, that whatever comes to an executor “ in lieu of the testator’s property,” or' “by reason of” his “ right of executorship,” shall be assets in. his hands. The profits of a trade or business, carried on or' continued by the executor, in pursuance of the will, have always been held to be within this definition.
In 2 Williams on Executors (1498), the author says: “Whether the executor takes upon himself to carry on the' trade, or does so in pursuance of a provision in articles of partnership entered into by the deceased, or by the direction' of the testator, contained in his will, or under the direction of the court of chancery, the profits ftf such trade shall be assets, for which he shall be accountableciting Gibblett v. Read, 9 Mod. 459; Pitt v. Pitt, 2 Cas. temp. Lee, 508. See also 2 Williams on Ex’rs. 1668, citing Palmer v. Mitchell, 2 M. & K. 672; Willett v. Blandford, 1 Hare, 253; Cooke v. Collingbridge, Jacob, 607.
Our administration law (1 S. & C. 598) provides a.s follows :
Sec. 162. “ Every executor or administrator' shall be' chax-geable with the amount of the sale bill, as hereinbefore.' *274 provided, and also, with all goods, chattels, rights and credits of the deceased which shall come to his hands and which are by law to be administered, although they should not be included in the inventory or sale bill; also, with all the proceeds of real estate sold for the payment of debts or legacies, and with all the interest, profit and income that shall in any wajf come to his hands from the personal estate of the deceased.”
Sic. 163. “ No profits shall be made by executors or administrators by the increase, nor shall they sustain any loss by the decrease or destruction, without their fault, of any part of the estate.”
I admit that a testator may direct the continuance of a trade or business by his executor, as trustee, independent of his executorship; and such cases often occur. But they are always either where there is a devise or bequest to the executor in trust, or where part of the assets are specifically set apart, and directed to be invested as a trust fund. In the former case the executor receives them' at once as trustee, ¡and they never become assets. In the latter, they are received by him as executor, and remain assets of the estate dill so set apart and invested. But the setting apart must be ¡distinct, complete and final. It must separate the fund from the .assets of the estate, and from the control of the executor as such, as perfectly as the payment of a legacy separates it from the estate, and casts the burden of managing and controling it upon the legatee in trust. And where the executor is to be held as acting in both capacities, it must plainly appear that such was the intention of the testator. The executorship itself., is a trust, and every provision in the will regarding the management of the assets, before they pass out of the executor’s hands into those of the beneficiaries, will prima facie be held as coming within that trust; and the contrary intention must be made plainly to appear. As a general rule, the duties of the executor, as such, are co-extensive with the provisions of the will; and it is only in cases of unmistakable intention, or of inherent necessity, that a separate character will be assigned to him.
*275 Now, what are the facts here ? and what are the provisions of this will ? The testator was carrying on a brewery, and he had a large estate beside. By his will, he directs the executors to continue the brewery for seven years, “ for the benefit of the estate.” He expressly forbids their making “ new loans of money,” and provides no means, other than the assets of the estate, for carrying it on. He makes certain specific pecuniary bequests, to be paid immediately, and one bequest payable in monthly sums during the whole period of seven years. The residue of the estate he gives to the defendants in error; and he directs that the brewery and its “proceeds” shall be delivered up to them at the end of the term. He also requires that distribution shall, from time to time, be made to these residuary legatees, whenever sufficient sums of money accure for that purpose. In other words, the testator embarks the entire estate, except the legacies made payable immediately, and except also the portion of the widow, should she refuse to take under the will, in the business of the brewery. It was to be carried on for the benefit of the estate, and must therefore be carried on at the expense and risk of the estate. This is the plain reading of the will, no matter what meaning you give to the word “ proceeds.” Whether you understand by that term profits, thus requiring all the avails of the brewery to be tied up for seven years; or whether you understand by it appurtenances, thus leaving the profits to be distributed as they accrue, the result is the same. The brewery business was the business of the estate. There was no devise or bequest to the executors, either of the brewery, or of the funds necessary to carry it on. It does not, then, come within that description of trust. Does it come within any other? How can we distinguish between this alleged trust fund and the other assets of the estate? Where shall we draw the line ? In what did the trust fund consist, and when did it cease to be assets and become a trust fund ? If the $41,000 became a part of the trust fund when set apart for the brewery, what did it become when restored again to the estate ? To what funds should the legatee, en *276 titled to monthly payments, look for her indemnity? To what funds should the creditors look, in the event of the failure of other assets ? What part of the money in bank, in the name of the executors, was trust funds, and what part assets ? And how can you distinguish one from the other in the executors’ account rendered in the probate court? The simple asking of these questions shows the impracticability of separating between this alleged trust and the assets of the estate. The two are inseparably blended, as parts of the one grand trust created by the will. In the mind of the testator the two trusts were a unit, both together constituting his plan for administering the estate. It is difficult to conceive how the duties can be divided, or assigned to two trustees at the same time; and it is more difficult to conceive, when the same person undertakes the whole trust, how his sureties can bind themselves for the performance of one part of the trust and not for the other, or how the trustee could be removed, as such, without also removing him as executor.
There is in this will, beyond ordinary bequests, nothing more than a simple direction to the executors, to retain a portion of the assets for a limited time, with a view to their increase, before paying them over to the parties entitled. During their retention, the power of the executors over them is complete and exclusive, and the legatees have no rights or equities till the period fixed for payment arrives. When they are paid the legatees take them absolutely, and discharged from all trusts and conditions; and they take them, not as beneficiaries under a trust, but as residuary legatees under the will. They take them, not as proceeds or profits of the brewery, but as the residuum of the estate, composed of the balance of the other assets, and also of these profits, without any possible means of determining how much arose from either source. Before such payment they are assets, liable to the payment of 'creditors, and not subject to the control of legatees. And should creditors now appear, the executors are liable to them for this $9576.32. When it is paid to the legatees, and not till then, they are discharged from liability.
*277 We are unable to see any foi'ce in tbe objection, that tbe statutory form of an executor’s bond, has not words sufficient to bind the sureties for such a trust. The statutory form is conditioned, for the executors “ administering” the estate, “ according to the law and the will.” That it has not been administered “ according to the will,” is the very thing complained of; and that it should be so administered is one of the things, and the principal thing, for which the sureties vouched.
Nor do we think the bond is vitiated by the fact, that in addition to the statutory form, it contains a provision that the executor shall pay the debts and legacies of the estate. Even were it true that this residuum and brewery property are a separate trust, in the sense claimed by counsel, still it was competent, and might by law have been required by the beneficiaries, that the trustee should give bond for the faithful performance of the trust. And will any one say, that the same parties might not bind themselves, in the same bond, for the performance of both trusts ? That is precisely what was done here ; and if the parties had executed two bonds, instead of one, both together would have contained substantially what is in this bond — nothing more, nothing less. One would have been conditioned that he should administer the estate, and the other conditioned that he should account for these residuary legacies, or trust funds. The parties chose to put the whole undertaking in a single bond, and we see no reason why it should not be enforced.
The same reasoning disposes of the objection, that this trust protracts the settlement of the estate, beyond the statutory period of eighteen months. For, whether it be a trust or an administration, the sureties, by the words of their bond, became responsible for its fulfillment. But it is not for the executor or his sureties to object on account of time. They should have made this objection when they were called upon to sign the bond. The limitation of time was not fixed for their benefit, but for the benefit of creditors and legatees. And although the statutory eighteen months may expire, and further time to the executor be refused by the court, he still *278 remains executor of the estate notwithstanding his default, and is still subject to all the liabilities and rights of the office, until the estate is fully administered, according to the law and the will. The statute (1 S. & C. 597) requires him to file accounts every twelve months, after the eighteen months have expired, “ until the estate shall be wholly settledhe is made liable to actions, so long as assets continue to come into his hands; and his power to collect the assets is unlimited as to time. See S. & C. 586, sec. 102, and id. 577, sec. 63. n
2. Admitting, then, that the sureties stand liable for the executor’s default as to those residuary legacies, or this trust fund, was a proper foundation laid, by showing a default in the executor, or an order of the proper court finding the amount in his hands, to justify a suit upon the official bond against the sureties ?
If the counsel for plaintiffs in error are correct, in claiming that this was a separate trust fund, and if the court is right in holding that the bond is broad enough to cover it, then the case is clear. ' Eor, it being a trust fund, unconnected with the administration of the estate, the superior court had complete jurisdiction, and its judgment would be conclusive against the trustee, and prima facie evidence against the sureties. In that case no finding or order of the probate court was necessary or admissible, and an action could be brought upon the bond without it. Nothing but the bond and the judgment against the principal, would be necessary to make a case against the sureties.
But if these were not trust funds proper, and the defendants are to be regarded as ordinary legatees, it is claimed that before suit can be brought by them, upon the official bond, there must be an order of the probate court finding the amount due; or a general order for the distribution. And it is claimed, on the other hand, that if such is the proper construction of the statute, yet where another court has, in the exercise of its jurisdiction, as a necessary part of the case, made the same finding and order, it will stand for, and super-cede the necessity of the order of the probate court.
*279 We deem it unnecessary to decide either of these questions in the present ease. We are of opinion there was a sufficient order made by the probate court. That court ordered the executor to pay over the $9576.32, the amount of the judgment in the superior court. That order implies, and is equivalent to, an order finding the amount due. It must be presumed, that a court will not order the payment of money which it does not find to be justly due. Besides, the order was perfectly equivalent to an order for general distribution, this sum being the whole balance of the estate in the executor’s hands. We can not inquire, collaterally, on what evidence the court found the amount due. If the court chose to make the judgment of the superior court the basis of its finding, it can not now be invalidated by showing that fact. It is enough now to show that the probate court did find the amount due, or make the order for distribution.
We are of opinion, therefore, that the sureties were bound for the executors’ faithful discharge of their duties in regard these brewery funds, and that the judgment of the superior court, with the order of the probate court, and the default of the executor, was sufficient to enable the legatees to bring their suit on the bond.
The judgment of the common pleas is affirmed.
Brinkerboef, O.J., and Scott, and White, JJ., concurred.